FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 11, 2020

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARTIN M.,<br><br>                    Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL,<br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>                    Defendant. | NO:  1:19-CV-03179-FVS<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND DENYING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT |

BEFORE THE COURT are the parties' cross motions for summary judgment.  ECF Nos. 10 and 11.  This matter was submitted for consideration without oral argument.  The Plaintiff is represented by Attorney D. James Tree.  The Defendant is represented by Special Assistant United States Attorney Joseph J. Langkamer.  The Court has reviewed the administrative record, the parties' completed briefing, and is fully informed.  For the reasons discussed below, the Court **GRANTS** Plaintiff's Motion for Summary Judgment, ECF No. 10, and **DENIES** Defendant's Motion for Summary Judgment, ECF No. 11.

ORDER ~ 1

## JURISDICTION

Plaintiff Martin M.[1] filed for supplemental security income and disability insurance benefits on April 13, 2016, alleging an onset date of March 31, 2014. Tr. 265-79.  At the hearing, Plaintiff amended the alleged onset date to February 9, 2016.  Tr. 52.  Benefits were denied initially, Tr. 123-28, and upon reconsideration, Tr. 134-55.  A hearing before an administrative law judge ("ALJ") was conducted on June 18, 2018.  Tr. 40-62.  Plaintiff was represented by counsel and testified at the hearing with an interpreter.  *Id*.  The ALJ denied benefits, Tr. 15-37, and the Appeals Council denied review.  Tr. 1.  The matter is now before this court pursuant to 42 U.S.C. §§ 405(g); 1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts, the ALJ's decision, and the briefs of Plaintiff and the Commissioner. Only the most pertinent facts are summarized here.

Plaintiff was 52 years old at the time of the hearing.  *See* Tr. 301.  He communicates in Spanish, and cannot understand or speak English.  Tr. 304.  He completed eleventh grade.  Tr. 306.  At the time of the hearing Plaintiff lived at a

---

[1] In the interest of protecting Plaintiff's privacy, the Court will use Plaintiff's first name and last initial, and, subsequently, Plaintiff's first name only, throughout this decision.

ORDER ~ 2

shelter.  Tr. 55.  Plaintiff has work history as a preform lightmaker, fruit packer, production helper, and material handler.  Tr. 52-58.  Plaintiff testified that he cannot work because he would have an anxiety attack and "need to leave."  Tr. 50-51.  He reported that he has anxiety "flare-ups" daily and they last "all day," and he has depression "[l]ike that sometimes I'm happy and I feel like I go somewhere and then later I'll be crying."  Tr. 50-51.

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational

interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Further, a district court will not reverse an ALJ's decision on account of an error that is harmless. *Id*. An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i),

ORDER ~ 4

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b), 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c), 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c), 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d), 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC),

ORDER ~ 5

defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f), 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The claimant bears the burden of proof at steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since February 9, 2016, the amended alleged onset date. Tr. 23. At step two, the ALJ found that Plaintiff has the following severe impairments: cervical disc desiccation and strain; bipolar disorder; major depressive disorder; posttraumatic stress disorder (PTSD); and psychotic disorder. Tr. 23. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 24. The ALJ then found that Plaintiff has the RFC

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c). The claimant can occasionally crawl, and can bilaterally reach overhead frequently. The claimant must avoid concentrated exposure to extreme cold. The claimant is able to understand, remember, and carry out simple, routine, repetitive tasks and instructions. He is able to maintain attention and concentration on simple, routine tasks for two-hour intervals between regularly scheduled breaks. He requires a predictable work environment with seldom changes, in which he is not required to make judgments or decisions. He is precluded from fast-paced production rate of work. He is precluded from public interaction, and can have only superficial interaction with coworkers and supervisors, meaning he is unable to engage in collaborative or teamwork tasks. The claimant can work in the vicinity of

ORDER ~ 7

no more than ten coworkers. He is more suited for dealing with things, rather than people.

Tr. 26. At step four, the ALJ found that Plaintiff is unable to perform any past

relevant work. Tr. 30. At step five, the ALJ found that considering Plaintiff's age,

education, work experience, and RFC, there are jobs that exist in significant

numbers in the national economy that Plaintiff can perform, including janitor and

hand packager. Tr. 30-31. On that basis, the ALJ concluded that Plaintiff has not

been under a disability, as defined in the Social Security Act, from February 9,

2016, through the date of the decision. Tr. 31.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying

him disability insurance benefits under Title II of the Social Security Act and

supplemental security income benefits under Title XVI of the Social Security Act.

ECF No. 10. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly considered Plaintiff's symptom claims; and

2. Whether the ALJ properly considered the medical opinion evidence.

## DISCUSSION

### A. Plaintiff's Symptom Claims

An ALJ engages in a two-step analysis when evaluating a claimant's

testimony regarding subjective pain or symptoms. "First, the ALJ must determine

whether there is objective medical evidence of an underlying impairment which

could reasonably be expected to produce the pain or other symptoms alleged."

ORDER ~ 8

1   *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not

2   required to show that her impairment could reasonably be expected to cause the

3   severity of the symptom he has alleged; he need only show that it could reasonably

4   have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591

5   (9th Cir. 2009) (internal quotation marks omitted).

6       Second, "[i]f the claimant meets the first test and there is no evidence of

7   malingering, the ALJ can only reject the claimant's testimony about the severity of

8   the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the

9   rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal

10   citations and quotations omitted).  "General findings are insufficient; rather, the

11   ALJ must identify what testimony is not credible and what evidence undermines

12   the claimant's complaints."  *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th

13   Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ

14   must make a credibility determination with findings sufficiently specific to permit

15   the court to conclude that the ALJ did not arbitrarily discredit claimant's

16   testimony.").  "The clear and convincing [evidence] standard is the most

17   demanding required in Social Security cases."  *Garrison v. Colvin*, 759 F.3d 995,

18   1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920,

19   924 (9th Cir. 2002)).

20       Here, the ALJ found that "[w]hile some degree of limitation is warranted,

21   the assigned residual functional capacity allows for significant credence to

[Plaintiff's] subjective allegations, and further limitation cannot be reasonably supported by the record." Tr. 27. More specifically, the ALJ noted (1) "[a]t psychological evaluation, the validity of results was questioned due to suspicion of poor effort and malingering," and (2) Plaintiff has "refused recommended treatment and has a documented history of poor compliance." Tr. 27. As an initial matter, when there is affirmative evidence of malingering, the ALJ is relieved of the burden of providing specific, clear, and convincing reasons to discount Plaintiff's testimony. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). Malingering has been defined as "the intentional production of false or grossly exaggerated physical or psychological symptoms, motivated by external incentives such as avoiding military duty, avoiding work, obtaining financial compensation, evading criminal prosecution, or obtaining drugs." *Mobbs v. Berryhill*, 2017 WL 6759321, at *11 n.5 (W.D. Wash. Dec. 29, 2017) (quoting the *American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders* (Text Revision 4th ed. 2000) at 739).

Here, the ALJ generally found that the validity of Dr. Cline's evaluation results was "questioned due to suspicion of poor effort and malingering." Tr. 27. However, as noted by Plaintiff, a plain reading of Dr. Cline's evaluation indicates that she specifically found only that (1) it was "unusual" that Plaintiff was able to repeat 3 digits forward and 3 digits backward, "and when [digit span backwards] is greater than [digit span forwards] malingering may be suspected"; and (2)

ORDER ~ 10

Plaintiff's ability to make five consecutive correct calculations on serial subtraction was "rather inconsistent with his poor digit span performance." ECF No. 10 at 14 (citing Tr. 394). Moreover, and most notably, the ALJ failed to consider Dr. Cline's additional finding that Plaintiff's test scores at the time of the assessment "indicates an above average level of effort and cooperation with the task and decreases the likelihood he is malingering at this time." Tr. 27, 391. Based on the foregoing, the Court finds the ALJ's general reference to this single evaluation does not rise to the level of substantial evidence to support a finding of malingering such that it would discharge the ALJ's burden to provide specific, clear, and convincing reasons to reject Plaintiff's symptom claims. *See Lingenfelter v. Astrue,* 504 F.3d 1028, 1035 (9th Cir. 2007) (holding that "we must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." (citation and internal quotation marks omitted))

In addition, the Court finds that the reasons offered by the ALJ for rejecting Plaintiff's symptom claims are not specific, clear, convincing. *Ghanim*, 763 F.3d at 1163. First, poor effort can provide substantial evidence to discount a claimant's symptom claims. *See Thomas*, 278 F. 3d at 959 (An ALJ may properly rely on a claimant's efforts to impede accurate testing of a claimant's limitations when finding a claimant less than credible); *see also Tonapetyan v. Halter*, 242 F.3d

ORDER ~ 11

1144, 1148 (9th Cir. 2001) (the ALJ appropriately considered Plaintiff's tendency

to exaggerate when assessing Plaintiff's credibility, which was shown in a doctor's

observation that Plaintiff was uncooperative during cognitive testing but was

"much better" when giving reasons for being unable to work).  However, as

discussed in detail above, the ALJ's general finding that "the validity of results

was questioned due to suspicion of poor effort and malingering" is not supported

by substantial evidence in the overall record; thus, to the extent the ALJ rejected

Plaintiff's symptom claims due to "poor effort and malingering," this was not a

specific, clear, and convincing reason.

Second, the ALJ found Plaintiff "has refused recommended treatment and

has a documented history of poor compliance."  Tr. 27.  Further, "[t]he fact there is

evidence [Plaintiff] has not fully cooperated suggests inconsistencies between

[Plaintiff's] allegations and the record evidence," and noncompliance "suggests

[Plaintiff's] limitations are less than alleged, as one would expect strict compliance

with medical directives given the alleged severity of symptoms."  Tr. 27.

Unexplained, or inadequately explained, failure to seek treatment or follow a

prescribed course of treatment may be the basis for an adverse credibility finding

unless there is a showing of a good reason for the failure.  *Orn v. Astrue*, 495 F.3d

625, 638 (9th Cir. 2007).  In support of this finding the ALJ cites a single treatment

note from January 2016 indicating that Plaintiff "is declining any medical

interventions, labs, vaccines," and "has a history of poor compliance."  Tr. 27, 380.

ORDER ~ 12

However, the Court's review of this same treatment note indicates that Plaintiff also expressed interest in medication for his bipolar diagnosis, and was "agreeable" to undergoing a "more thorough psychiatric evaluation." Tr. 380. Moreover, as argued by Plaintiff, the record includes consistent evidence that Plaintiff was attending his appointments and taking his medication as prescribed. ECF No. 10 at 15 (citing Tr. 416, 422, 428, 433, 444, 449, 484, 491, 498, 507, 514, 520, 527, 535, 541, 560, 576, 581, 602-612).

Finally, Plaintiff argues that "his mental health symptoms did sometimes present a barrier to obtaining treatment." ECF No. 10 at 15. More specifically, Plaintiff "expressed being uninterested in participating in treatment due to paranoid delusions that the government and the therapist were trying to control him," and on several occasions he refused blood draws due to "an intense fear of needles." ECF No. 10 at 15-16 (citing Tr. 415, 419, 426, 506). Pursuant to Social Security Ruling 16-3p, an ALJ "will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." Social Security Ruling ("SSR") 16-3p at *8-*9 (March 16, 2016), *available at* 2016 WL 1119029. For instance, where the evidence suggests lack of mental health treatment is part of a claimant's mental health condition, it may be inappropriate to consider a claimant's lack of mental health treatment as evidence of a lack of credibility. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th

Cir. 1996).  Here, the ALJ failed to consider the "possible reason" that Plaintiff did not comply with treatment due to mental health symptoms; nor does the ALJ cite any specific evidence of noncompliance during the relevant adjudicatory period, aside from a single treatment note that itself generally references a "history of poor compliance."  For all of these reasons, the Court finds the ALJ's brief reference to Plaintiff's alleged poor compliance with recommended treatment was not a specific, clear, and convincing reason to reject Plaintiff's symptom claims.

Third, and finally, the ALJ noted that "Plaintiff has admitted some lack of motivation to work, which is likely to play some role in his lack of employment."  Tr. 27.  The ALJ may draw reasonable inferences regarding a claimant's motivation to work.  *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *see also Thomas*, 278 F.3d at 959 (poor work history or a showing of "little propensity to work" during one's lifetime may be considered as a factor in evaluating Plaintiff's symptom claims).  Here, in support of this finding, the ALJ cites Plaintiff's statement to Dr. Cline during the examining evaluation that he "is not sure if he wants to go back to work or not at this time."  Tr. 27 (citing Tr. 380).  However, as noted by Plaintiff, treating providers throughout the record indicated that Plaintiff's depression decreased his motivation, including his motivation to look for work.  Tr. 443, 498, 506, 514, 573.  Thus, "[b]ecause [Plaintiff's] lack of motivation to work corresponds directly to the deterioration of his mental health, this lack of motivation to work should be seen as a symptom of his depression, not

a clear and convincing reason to reject his testimony." ECF No. 10 at 17.

Moreover, as noted by Plaintiff, the ALJ's finding "is especially egregious given [Plaintiff's] long work history dating back to the late eighties, including working for twenty years at the same company." ECF No. 10 at 17 (citing Tr. 294, 314). Thus, based on the overall record, a single admission that Plaintiff had "some lack of motivation to work" was not a clear and convincing reason, supported by substantial evidence, for the ALJ to discount Plaintiff's symptom claims.

For all of these reasons, the ALJ's rejection of Plaintiff's symptom claims is not supported by clear and convincing reasons, and must be reconsidered on remand.

**B. Medical Opinions**

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant [but who review the claimant's file] (nonexamining [or reviewing] physicians)." *Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted). Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's. *Id.* If a treating or examining physician's opinion is uncontradicted, the ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart,* 427 F.3d

ORDER ~ 15

1211, 1216 (9th Cir. 2005).  Conversely, "[i]f a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  *Id.* (citing *Lester*, 81 F.3d at 830-31).  "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings."  *Bray v. Comm'r of Soc. Sec. Admin.,* 554 F.3d 1219, 1228 (9th Cir. 2009) (quotation and citation omitted).

The opinion of an acceptable medical source such as a physician or psychologist is given more weight than that of an "other source."  *See* SSR 06-03p (Aug. 9, 2006), *available at* 2006 WL 2329939 at *2; 20 C.F.R. § 416.927(a). "Other sources" include nurse practitioners, physician assistants, therapists, teachers, social workers, and other non-medical sources.  20 C.F.R. § 416.913(d). The ALJ need only provide "germane reasons" for disregarding an "other source" opinion.  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  However, the ALJ is required to "consider observations by nonmedical sources as to how an impairment affects a claimant's ability to work."  *Sprague v. Bowen,* 812 F.2d 1226, 1232 (9th Cir. 1987).

Plaintiff argues the ALJ erroneously considered the opinions of examining psychologist R.A. Cline, Psy.D., treating social worker Ivonne Garcia, MSW, and testifying medical expert Donna Veraldi, Ph.D.,  ECF No. 10 at 8-13.

ORDER ~ 16

### 1. *R.A. Cline, Psy.D.*

In February 2016, Dr. Cline examined Plaintiff and found marked limitations in his ability to communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, and complete a normal workday and work week without interruptions from psychologically based symptoms.  Tr. 390-94.  The ALJ gave Dr. Cline's opinion little weight for several reasons.  Tr. 28. First, the ALJ correctly noted that Dr. Cline's opinion "is self-limited to a nine-month period, making it relevant to a very short period during the adjudicatory timeframe, a period of less than one year."  Tr. 28.  To be found disabled, a claimant must be unable to engage in any substantial gainful activity due to an impairment which "can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also Chaudhry v. Astrue*, 688 F.3d 661, 672 (9th Cir. 2012).

In addition, the ALJ discounted Dr. Cline's opinion because (1) it was "based on a one-time examination, without benefit of the entire record"; and (2) the opinion was in check-the-box form "without substantial narrative rationale in support of the limitations assigned," including lack of indication as to how "possible malingering" had "any effect on the assigned capacity."  Tr. 28.  First, the Court notes that while the extent to which a medical source is "familiar with the other information in [the claimant's] case record" is a relevant factor in weighing a medical opinion, the opinions of examining physicians and

ORDER ~ 17

psychologists should not be dismissed on that basis. 20 C.F.R. §§ 404.1527, 416.927; *Lester*, 81 F.3d at 830. This is not a specific, legitimate reason for giving little weight to Dr. Cline's opinion.

Second, relevant factors to evaluating any medical opinion include the amount of relevant evidence that supports the opinion, the quality of the explanation provided in the opinion, and the consistency of the medical opinion with the record as a whole. *Lingenfelter*, 504 F.3d at 1042; *Orn*, 495 F.3d at 631. However, as noted by Plaintiff, "there is no authority that a 'check-the-box' form is any less reliable than any other type of form." ECF No. 10 at 10 (citing *Trevizo v. Berryhill*, 871 F.3d 664, 667 n.4 (9th Cir. 2017)). Here, Dr. Cline's own clinical findings included moderate mood instability and moderate psychosis; and his mental status examination findings during the evaluation included altered perception, reports of hearing voices, a sense of paranoia, fund of knowledge not within normal limits, memory not within normal limits, poor ability to think abstractly, and limited insight and judgment. Tr. 394. Moreover, as discussed above, the ALJ cites Dr. Cline's findings of "possible malingering" and "results suggestive of symptom magnification," but fails to consider Dr. Cline's contemporaneous note that Plaintiff's test scores at the time of the evaluation indicated an "above average level of effort and cooperation with the task and decrease[d] the likelihood that he [was] malingering at [that] time." Tr. 28, 391, 394.

ORDER ~ 18

Finally, the Court notes that when weighing an opinion, the ALJ must do more than state a conclusion.  Rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998).  "This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id*.  Here, the ALJ fails to summarize and interpret the entirety of Dr. Cline's evaluation; thus, the ALJ's conclusion that Dr. Cline failed to give adequate explanation for his opinion is not supported by substantial evidence.  This was not a specific and legitimate reason for the ALJ to reject Dr. Cline's opinion, and it should be reconsidered on remand.

### 2.  Ivonne Garcia, MSW

In April 2017, treating provider Ivonne Garcia opined that Plaintiff had marked limitations in his ability to work in coordination with or proximity to others without being distracted by them; interact appropriately with the general public; ask simple questions or request assistance; get along with co-workers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; respond appropriately to changes in the work setting; be aware of normal hazards and take appropriate precautions; and set realistic goals or make plans independently of others.  Tr. 463-65.  Ms. Garcia also opined that Plaintiff would

be off-task 21-30% during a 40-hour week schedule, and would miss 2 days per month if he attempted to work a 40-hour week work schedule.  Tr. 465.

The ALJ gave Ms. Garcia's opinion little weight because her opinion was completed "exclusively on a check-the-box form, without reference to treatment records, record evidence, and without any analysis or rationale.  The basis of the opinion is wholly unclear, and the record does not contain substantial evidence supporting the level of limitation assigned."  Tr. 28.  An ALJ may permissibly reject check -box reports that do not contain any explanation of the bases for their conclusions. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996).  However, the Ninth Circuit has held that when a treating physician's check-box opinion was "based on significant experience with [Plaintiff] and supported by numerous records, [it was] therefore entitled to weight that an otherwise unsupported and unexplained check-box form would not merit."  *See Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014); *see also Trevizo*, 871 F.3d at 667 n.4 ("[T]here is no authority that a 'check-the-box' form is any less reliable than any other type of form").  As noted by Plaintiff, Ms. Garcia made "observations in her treatment notes that support the limitations she identified," including notations of anxious affect, depressed mood, pressured speech, tangential thought process, paranoia, and racing thoughts.  ECF No. 10 at 13; Tr. 481, 483, 488-90, 497, 503.  Because the ALJ failed to consider that Ms. Garcia was a treating provider with arguably

ORDER ~ 20

"significant experience" with Plaintiff, this was not a specific and germane reason to reject Ms. Garcia's treating opinion.

Finally, the ALJ concluded, without any citation to the record, that "the record does not contain substantial evidence supporting the level of limitation assigned" by Ms. Garcia. However, as above, when weighing an opinion, the ALJ must do more than state a conclusion. Rather, the ALJ must "set forth his own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725. Here, the ALJ fails to summarize and interpret any "facts and conflicting clinical evidence" in support of this finding. *Id*. Thus, to the extent the ALJ rejected Ms. Garcia's opinion as unsupported by substantial evidence in the overall record, this was not a specific and germane reason.

For all of these reasons, the Court finds the ALJ erred in considering Ms. Garcia's treating provider opinion, and it must be reconsidered on remand.

### 3. Donna Veraldi, Ph.D.

The ALJ summarized Dr. Veraldi's expert testimony as finding that Plaintiff's "conditions caused moderate limitations in the 'paragraph B' criteria, with restrictions *bordering on marked* limitation in interaction and adaption." Tr. 27 (emphasis added). The ALJ gave Dr. Veraldi's expert testimony substantial weight. Tr. 27-28. Plaintiff argues the ALJ's summary of Dr. Veraldi's testimony is "contradicted by the transcript of the hearing," and in support of this finding he cites Dr. Veraldi's specific testimony that Plaintiff would be in the "moderate to

marked range" in the area of adaptation and interaction.  Tr. 47.  Defendant argues

that "[a]lthough Dr. Veraldi initially equivocated about whether Plaintiff had

moderate or marked limitations in certain functional areas, she ultimately

confirmed that, from an adaptation standpoint, Plaintiff could function in an

environment that was predictable and had seldom to no change."  ECF No. 11 at 8.

Defendant is correct that "the ALJ is responsible for translating and

incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec.*

*Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015); *see also Turner v. Comm'r of Soc.*

*Sec.,* 613 F.3d 1271, 1223 (9th Cir. 2010)  (an ALJ's findings need only be

consistent with a physician's credited limitations, not identical to them).  However,

as opposed to an alleging any error in formulating Plaintiff's RFC, Plaintiff

specifically argues that the ALJ erred in considering Dr. Veraldi's testimony as to

the ALJ's "paragraph B" findings at step three, and that "[g]iven the ALJ's finding

that [Plaintiff] had a marked limitation in interacting with others, properly

crediting Dr. Veraldi's opinion that [Plaintiff] had a marked limitation in adaption

would lead to a finding of disability."  ECF No. 10 at 9.  Thus, the record, as it

stands, does not permit the Court to conclude that any error in the ALJ's finding

would be harmless.  *See Molina*, 674 F.3d at 1115 (error is harmless "where it is

inconsequential to the [ALJ's] ultimate nondisability determination.").  In light of

the need to remand for reconsideration of Plaintiff's symptom claims, and the

medical opinions discussed above, the ALJ should reconsider Dr. Veraldi's

testimony on remand if indicated.

## REMEDY

The decision whether to remand for further proceedings or reverse and

award benefits is within the discretion of the district court. *McAllister v. Sullivan*,

888 F.2d 599, 603 (9th Cir. 1989). An immediate award of benefits is appropriate

where "no useful purpose would be served by further administrative proceedings,

or where the record has been thoroughly developed," *Varney v. Sec'y of Health &*

*Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988), or when the delay caused by

remand would be "unduly burdensome[.]" *Terry v. Sullivan*, 903 F.2d 1273, 1280

(9th Cir. 1990); *see also Garrison v. Colvin*, 759 F.3d 995, 1021 (noting that a

district court may abuse its discretion not to remand for benefits when all of these

conditions are met). This policy is based on the "need to expedite disability

claims." *Varney*, 859 F.2d at 1401. But where there are outstanding issues that

must be resolved before a determination can be made, and it is not clear from the

record that the ALJ would be required to find a claimant disabled if all the

evidence were properly evaluated, remand is appropriate. *See Benecke v.*

*Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172,

1179-80 (9th Cir. 2000).

The Court finds that further administrative proceedings are appropriate. *See*

*Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103-04 (9th Cir. 2014)

ORDER ~ 23

(remand for benefits is not appropriate when further administrative proceedings would serve a useful purpose). Here, the ALJ improperly considered Plaintiff's symptom claims and the medical opinion evidence, which calls into question whether the assessed RFC, and resulting hypothetical propounded to the vocational expert, are supported by substantial evidence. "Where," as here, "there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler*, 775 F.3d at 1101. Instead, the Court remands this case for further proceedings. On remand, the ALJ must reconsider Plaintiff's symptom claims. In addition, the ALJ should reconsider the medical opinion evidence, and provide legally sufficient reasons for evaluating the opinions, supported by substantial evidence. If necessary, the ALJ should order additional consultative examinations and, if appropriate, take additional testimony from a medical expert. Finally, the ALJ should reconsider the remaining steps in the sequential analysis, reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

**ACCORDINGLY, IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, ECF No. 10, is **GRANTED**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2. Defendant's Motion for Summary Judgment, ECF No. 11, is **DENIED**.

ORDER ~ 24

3.  Application for attorney fees may be filed by separate motion.

The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

**DATED** September 11, 2020.



Stanley A. Bastian
Chief United States District Judge

ORDER ~ 25